**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Crim. No.  22-CR-00083-8 (CKK)** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **RANDALL LANCE,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing. For the reasons herein, the United States requests that the Court sentence the Defendant to a period of **sixty-six months** of incarceration. The Government further requests that the Court impose a period of **four years** of supervised release. The Government is also seeking the forfeiture of any firearms and ammunition involved in or used in the knowing commission of this offense, including but not limited to the following items seized on June 15, 2021: $13,359.00 in U.S. Currency, Ar-15 style pistol with no serial number, Century Arms RAS 47 firearm with serial number RAS47111801, Zastava Arms ZPAP85 serial number 285007810, Glock style 9mm pistol with no serial number, and approximately 51 pounds of marijuana. In addition, the Government is requesting that the Defendant be ordered to pay $100 per a felony conviction to the Clerk of the United States District Court for the District of Columbia. In support of this sentence, the Government states the following.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Randall Lance is before this Court after pleading guilty on May 23, 2023 to Count One

of the Superseding Indictment – Conspiracy to Distribute, and Possess with Intent to Distribute 100 Kilograms or More of Marijuana, in violation of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii), and 846.  Lance was originally charged in Counts 1 and 18 of the Superseding Indictment (ECF No. 45), Count 18 being Using, Carrying, and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

The investigation into Mr. Lance and his co-defendants began around June of 2021 when law enforcement discovered an active and armed crew calling themselves "LA Dank DMV" or "DC Dank," that was using Instagram and social media to promote selling large quantities of high-grade marijuana in and around Washington D.C.  Throughout the course of the investigation, members of the Federal Bureau of Investigation ("FBI") recovered a total weight of over 122 pounds of marijuana and nineteen (19) firearms and seven (7) additional machinegun conversion devices that were used in furtherance of the conspiracy to distribute marijuana.  Electronic ledgers and receipts recovered during the execution of search warrants further revealed that Lance and his co-defendants trafficked well over 220 pounds, or 100 kilograms, of marijuana.  FBI identified the following principal members of LA Dank during their investigation:

- Abubakr Banire (*aka* "Swave")

- Christopher Akinduro (*aka* "Oshay")

- Isaac Akinduro (*aka* "Black")

- Kavon Duncan (*aka* "Babyk")

- Joe Blyther (*aka* "Hawk")

- Avery Bost (*aka* "Avenue, Ave, Left")

- Jared Smith (*aka* "Twin, Jefe")

- Randall Lance (*aka* "Mike, Mike Lambo")

- Omar Butler (*aka* "O")

The evidence shows Lance and his co-defendants used rental properties and other locations, referred to by crew members as "trap" or "trap houses," to store, transfer, and sell large quantities of marijuana to customers. Central to the crew's operation was the use of websites, Instagram, and other social media and communications platforms to advertise and sell large quantities of marijuana. Through the government's investigation, FBI identified three websites associated with LA Dank: (1) www.ladankco.com; (2) www.ogladankco.com; and (3) www.ladankdmv.com. While each website served a different function, i.e. www.ladankco.com was primarily used to sell and promote LA Dank branded clothing, each of the websites was maintained and used to further the conspiracy to distribute marijuana in and around Washington D.C. And while the websites themselves appear professional, LA Dank is not a licensed company to operate in the District of Columbia.

Specifically, the www.ladankdmv.com website described LA Dank DMV as operating out of Washington D.C., with a cell phone number associated with Abubakr Banire, one of Mr. Lance's co-defendant co-conspirators.

# The Story of La Dank DMV

La Dank DMV is a well-renowned online store that has continually featured a variety of high-quality and affordable products since day one.

Our passion for excellence has driven us from the beginning, and continues to drive us into the future. The team at La Dank DMV knows that every product counts, and strives to make the entire shopping experience as rewarding and fun as possible. Check out our store and special offers, and get in touch with questions or requests.

# Contact Us

Washignton, D.C.

ladankdmv@gmail.com

424-356-4611

Through these websites and social media (as discussed further below), one method defendant Lance and his co-conspirators advertised the sale of marijuana were through menus that bore a standardized LA Dank logo containing different flavors and brands of marijuana and prices for different amounts of marijuana.



The crew's www.ladankdmv.com website specifically advertised for the sale of marijuana and provided a means for customers to purchase marijuana from members of LA Dank.   For

example, screenshots from the www.ladankdmv.com website show advertisements stating "Pinky Oreoz Now Available In The D.M.V."  Pinky Oreoz is one of LA Dank's more expensive, highly sought after marijuana strains that was advertised heavily by the crew during their operation. Customers could then directly order from the website by clicking on strains.





The investigation revealed substantial Instagram records of Mr. Lance and his co-defendants utilizing Instagram in furtherance of the conspiracy.  Mr. Lance, using the Instagram account *paperchasing_lambo*,[1] displayed advertisements for the sale of marijuana and other

---

[1] Mr. Lance confirmed this is his account in the Presentence Investigation Report on page 14.  *See* ECF No. 176.

content related to the crew's drug trafficking activities. For example, on June 16, 2021, Lance's Instagram account displayed a story that showed a video of LA Dank Marijuana packaging of a marijuana strain called "Lemon Cherry Oreos," and tagged the LA Dank Instagram account "@ladankcodmv"



*paper_chasing_lambo* **Instagram story displayed on June 16, 2021**

And on December 15, 2021, Lance's Instagram account displayed an Instagram story stating "ACTIVE OG & ZA." Based on the investigation, "active" is another term used by Lance and his crewmembers to communicate to customers that Lance is actively selling marijuana, and "OG" and "Za" are two types of strains of marijuana.



***paper_chasing_lambo*** **Instagram story displayed on December 15, 2021**

Lance's Instagram account records revealed numerous posts, stories, and other content related to LA Dank DMV marijuana menus and advertising marijuana for sale. Based on ledgers (as discussed more below) and other information recovered during the course of the investigation, the following terminology was used by Lance and other members of the LA Dank crew when advertising marijuana:

- H/O = Half Ounce

- O = Ounce

- Zip = 28 grams

- QP = Quarter Pound

- HP = Half Pound

- P = Pound

For example, Lance is seen in the below Instagram stories on his account advertising the sale of "Thunder," "OG," and "Za" strains of marijuana in various quantities.



OC & ZA BAGS FOR A GOOD NUMBER
GET NEXT TO ME!



⚡⚡⚡

H/0-65
O-125
QP-500
HP-900
P-1800

HIT MY LINE



OC AND ZA BAGS GET NEXT TO ME
BEFORE IT YOO LATE!



100 DOLLAR ZIPS ALL DAY TODAY
STRAIGHT THUNDER



🚨 ALERT

Since The Washington Football
Team Didn't Win Yesterday, We Still
Promised Some Giveaways.

STASH N DASH

Washington , D.C.

4 PM EST It's Going
Down. Stay Tuned For
Hints!!!
@LADANKCODMV
WE BOUT TO POST THE 4 DROP
LOCATIONS IN A MIN



OC BAGS CHEPEST NUMBER IN TOWN

 

While this sentencing memorandum discusses the Instagram messages associated with Lance, it notes that Instagram accounts for Banire, Blyther, C. Akinduro, I. Akinduro, Duncan, and Bost were observed through open-source investigations as well as search warrants.  All of the Instagram accounts of Lance's co-defendants show a similar type of advertisement in furtherance of the conspiracy to distribute marijuana.

The government also recovered and extracted data from cellphones of certain crewmembers, including Banire and Blyther.  Banire's phone revealed a text chain that was named "DC Dank Full Members" that ranged from May 18, 2021 to October 25, 2021 and which included Lance as one of its members.  Blyther's phone revealed the same text message thread that ranged from May 26, 2021 to July 15, 2021.  Messages from this text chain show Lance actively coordinating with other members of the LA Dank crew to sell marijuana.  For example, on May 29, 2021, Banire (identified under contact "Swove La Dc") asked all members of the LA Dank crew whether they had any "OG" strain marijuana left, and Lance (identified under contact "Mike Upt"):



Another example is on June 3, 2021, where Butler indicates a purchaser is incoming to a stash location, and Lance acknowledges.  Terminology used by Lance and his co-defendants includes the term "hit," which means that a customer is incoming and a purchase will be made for marijuana.



The contents of the DC Dank Full Members chat show numerous other instances where Lance actively participates in the conspiracy.  For example, on June 3, 2021, text messages show Butler asking whether any of the crewmembers have "OG," and Lance replied that nobody was at the "spot," which law enforcement has come to understand is the location where the crewmembers sell marijuana out of (also referred to commonly as the "trap" by crewmembers).   On June 10, 2021, Banire tells crewmembers that they have to tell customers to park at the park.  Lance says that he has six OGs, priced at $1850 to $1900 (which law enforcement came to understand as the price per pound), and sends a photo of six bags of marijuana.  Smith (identified under contact Jefe

Jr) informs the group a customer is outside.  Butler informs the group that two customers are coming, and that he will be there shortly.



*June 3, 2021 Messages between Lance and Others referencing marijuana sales*
*at the crew's current stash house ("the spot")*



*June 10, 2021 Messages between Lance and Others referencing marijuana sales*
*at the crew's current stash house*

From these phone extractions, the government was able to determine the total weight of marijuana that was possessed by Lance and his co-defendants.  Data extracted from Blyther's

phone shows on May 24, 2021, Blyther sent an inventory of marijuana strains and prices that had names "Broadway" and "Taco Spot," which law enforcement believed were different trap houses that they were storing marijuana at the time.  As seen in the below items extracted from Blyther's phone, Broadway had a total of 465.5 pounds of marijuana, and Taco Spot had a total of 38 pounds of marijuana.  In the same text, Blyther informs the crewmembers of a customer who wants to purchase 100 pounds of the "Za" strain of marijuana.



| NAME | PRICE | BROADWAY | TACO SPOT |
|---|---|---|---|
| CHERRY GUSHERS | $ 850.00 | 46 | 1 |
| VADER OG | $1,200.00 | 1 | 0 |
| PARIS OG | $1,350.00 | 6 | 1 |
| LA KUSH CAKE | $1,400.00 | 20 | 1 |
| WHITE COOKIE MINTZ | $1,500.00 | 36 | 0 |
| PINK KUSH MINTZ | $1,600.00 | 0 | 1 |
| KIMBER OG | $1,850.00 | 1 | 1 |
| SUPER JET FUEL | $2,000.00 | 29 | 1 |
| SUPER SOUR DIESEL | $2,200.00 | 23 | 1 |
| DIVORCE CAKE | $2,450.00 | 9 | 1 |
| ALIEN SOUR APPLE | $2,450.00 | 0 | 1 |
| KHALIFA MINTZ | $2,500.00 | 1 | 1 |
| DOSI CAKE | $2,600.00 | 3 | 1 |
| APPLES N BANANAS | $2,600.00 | 5 | 1 |
| GLOOKIES | $2,600.00 | 18 | 1 |
| BLEU SLUSHIE | $2,900.00 | 0 | 1 |
| ITALIAN ICE CREAM | $2,900.00 | 42 | 1 |
| WHITE SOUFFLE | $2,900.00 | 5 | 1 |
| DOSI MINTZ | $2,900.00 | 0 | 1 |
| SHERBMINTZ | $3,000.00 | 0 | 1 |
| MAC N MINTZ | $3,200.00 | 1.5 | 1 |
| TRUFFLE RESERVE | $3,200.00 | 0 | 1 |
| SCOTTI PAYTON | $3,200.00 | 7 | 1 |
| CEREAL MILK | $3,200.00 | 2 | 1 |
| RED SLUSHEE | $3,200.00 | 1 | 1 |
| SUPER YODUHH | $3,300.00 | 7 | 1 |
| ITALIAN ICE | $3,400.00 | 3 | 1 |
| LEMON CHERRY GELATO (smalls) | $3,400.00 | 3 | 1 |
| ITALIAN CHERRY GELATO | $3,600.00 | 10 | 1 |
| BLUE RASPBERRY GELATO | $3,600.00 | 0 | 1 |
| SHERBZQUAD | $3,700.00 | 35 | 1 |
| RAINBOW OREOZ | $3,700.00 | 9 | 1 |
| WHITE PEACH GELATO | $3,700.00 | 4 | 1 |
| GASTRO POP | $3,700.00 | 13 | 1 |
| MARSHMELLOW GELATO | $3,700.00 | 9 | 1 |
| SUPER RUNTZ | $3,800.00 | 7 | 1 |
| WHITE GUMMY RUNTZ | $3,900.00 | 40 | 1 |
| WATERMELON RUNTZ | $4,000.00 | 2 | 1 |
| PEANUT BUTTER OREOZ | $4,100.00 | 13 | 1 |
| PINKY'S OREOZ | $4,900.00 | 38 | 1 |

_$!<Other>!$_

IMG_5164.heic
image/heic
~/Library/SMS/Attac...

5/24/2021 10:16:39 PM(UTC-4)

Sources (2)

_$!<Other>!$_

He said he wanna see the whole list he trying buy 100 za

5/24/2021 10:17:23 PM(UTC-4)

Sources (1)

_$!<Other>!$_

I told him we work with him trying lock him n with the dank family

5/24/2021 10:18:00 PM(UTC-4)

Sources (1)

_$!<Other>!$_

He a player so he know where his ass at

5/24/2021 10:18:21 PM(UTC-4)

Sources (1)

On June 6, 2021, Banire texted the crewmembers a photo of a ledger, which showed the strains of marijuana, prices, the amount of bags, and total price.  This ledger contained a total 217

"units" of marijuana at a total cost of $556,960.00.  The government learned from its investigation that the LA Dank crew refers to a "unit" as a pound of marijuana.



On October 24, 2021, Blyther texted Bost photos of a Swave's (Banire) account, which had his inventory of marijuana strains, quantities, prices, and showed a balance of $1,052,146.00 of marijuana.

| VE ACCOUNT | | | |
|---|---|---|---|
| | | BALANCE 5/24 | $ 496,996.00 |
| | | PRICE | TOTAL |
| DROPPED OFF | QTY | $ 1,450.00 | $ 18,850.00 |
| OG | 13 | $ | |
| | | BALANCE 5/25 | $ 515,846.00 |
| | | PRICE | TOTAL |
| /7 TRUCK DROP OFF | QTY | | |
| PINKY'S OREOZ | 10 | $ 4,900.00 | $ 49,000.00 |
| LEMON CHERRY OREO | 30 | $ 4,700.00 | $ 141,000.00 |
| CAL GELATO (B) | 19 | $ 3,200.00 | $ 60,800.00 |
| CAL GELATO (C) | 23 | $ 2,800.00 | $ 64,400.00 |
| LEMON MINTZ | 70 | $ 1,400.00 | $ 98,000.00 |
| JUNGLE MINTZ | 30 | $ 1,400.00 | $ 42,000.00 |
| WHITE GUMMY RUNTZ | 20 | $ 3,400.00 | $ 68,000.00 |
| RAINBOW OREOZ | 5 | $ 4,200.00 | $ 21,000.00 |
| SHERBSQUAD | 10 | $ 3,700.00 | $ 37,000.00 |
| | | | $ 581,200.00 |
| | | NEW TAB TOTAL PU 6/7 | $ 1,097,046.00 |
| | | BALANCE 6/7 | TOTAL |
| | | PRICE | $ 28,000.00 |
| 6/8 PICKED UP | QTY | $ 1,400.00 | |
| LEMON MINTZ | 20 | BALANCE 6/8 | $ 1,125,046.00 |

Law enforcement began recovering marijuana on June 15, 2021. On that date, law enforcement executed a search warrant issued by the Circuit Court for Prince George's County, Maryland at 1928 Whistling Duck Drive, Upper Marlboro, Maryland after conducting surveillance and observing multiple LA Dank DMV crew members and purchasers traveling to and from the premises. The search revealed that the residence was an Airbnb rental unit utilized by the crew as a stash house to store, package, and sell large quantities of marijuana. Law enforcement found six persons – including Lance – inside the residence at the time of the search. Law enforcement also located four firearms inside, including: (1) an AR pistol-style privately made firearm ("PMF"); (2) a Century Arms Ras 47; (3) a Zastava Arms firearm; and (4) a Glock-style 9mm PMF. The firearms are depicted below:



Law enforcement also recovered approximately 51 pounds of marijuana, marijuana packaging, ammunition, firearm magazines, a money countering machine, and approximately $13,359 in United States currency from inside the residence. Importantly, one of the seized PMF firearms was subsequently test fired and determined to be fully a fully automatic machinegun.

At the time of the search, the firearms were located out in the open on the living room floor, TV table, and sofa, surrounded by LA Dank marijuana, packaging, and distribution supplies, as shown below:



 

The crew had also set up a video surveillance system to monitor the exterior of the residence:

 

Large quantities of marijuana, LA Dank marijuana packaging, distribution supplies, and United

States currency were located and seized throughout the premises, as depicted in part below:

 





With respect to Lance and firearms usage, law enforcement also discovered an Instagram story saved to Lance's Instagram account, which tagged Lance's Instagram account stating "@paper_chasing_lambo [snake, check, and heart emojis] love you Soulja" and depicted Lance in the driver's seat of a vehicle with a firearm:



*shiddoeedasteppa* **Instagram story tagging Lance's Instagram Account**

The co-defendants, including Lance, possessed numerous firearms in furtherance of their drug trafficking activities. Specifically, law enforcement has seized approximately 19 firearms from crew members, their residences, and stash locations during the course of the investigation – four of which were discovered at a rental house being utilized by the crew to sell large quantities of marijuana during the June 15, 2021 search warrant where Lance was present. Five of the firearms found in the possession of co-defendants or at crew stash locations – including one of the four firearms in Count 18 seized during June 2021 search warrant – have been tested and confirmed to function as fully automatic firearms (machineguns). In addition, the investigation has led to the discovery and seizure of seven additional machinegun conversion devices from a location associated with co-defendant Joe Blyther. Altogether, the investigation has revealed substantial evidence of a strong connection between the co-defendants' possession of firearms in furtherance of their drug trafficking.

Following the June 15, 2021 search warrant, law enforcement executed additional search warrants and stops of LA Dank crew members, which resulted in the recovery of additional firearms and more marijuana.  This included:

- The June 28, 2021 search warrant of C. Akinduro's vehicle, where law enforcement recovered one Taurus G2 9mm pistol, LA Dank packaging, and approximately seven (7) pounds of marijuana.

- The July 14, 2021 arrest of Blyther, where law enforcement recovered a 9mm Glock 26 pistol and approximately five (5) pounds of marijuana.

- The August 25, 2021 search warrant of 306 Highland Drive in Glen Burnie, Maryland (an address associated with I. Akinduro), where law enforcement recovered six (6) firearms, body armor, marijuana, LA Dank packaging, a scale, and two vehicles.  A subsequent search of those two vehicles revealed receipts belonging to I. Akinduro,

- The December 21, 2021 search warrant of two units (unit 916 and 1012) rented out by Banire at the WhyHotel located at 331 N Street, Northeast in Washington D.C.  In unit 916, law enforcement recovered a Glock 19 9mm caliber pistol with a machinegun conversion device installed, an AR style pistol, an AR firearm magazine loaded with 25 5.56 caliber rounds, 68 grams of marijuana, a digital scale, and a laptop labeled "LA Dank Exotics."  Both firearms was subsequently test fired and determined to be fully automatic machineguns.  Banire and an individual named Zachary Miller was present inside the unit at the time of the execution of the warrant.  In unit 1012, law enforcement recovered a Glock 26 9 millimeter caliber pistol with a machinegun conversion device installed, a second Glock 26 9 millimeter caliber pistol, a 9 millimeter caliber ammunition box, approximately 40 pounds of marijuana, a scale, a money counter, and approximately

$18,000.00 in United States currency.  Duncan and C. Akinduro were present inside of the unit at the time of the execution of the search warrant.  The Glock with the machinegun conversion device installed was test fired and determined to be a fully automatic machinegun.

- The December 21, 2021 search warrant of 3645 Elder Oaks Boulevard in Bowie, Maryland (an address associated with Blyther) where law enforcement recovered a Ruger LCP .380 pistol, assorted ammunition, approximately 20 pounds of marijuana, approximately $21,000.00 in United States currency, LA Dank packaging, and marijuana distribution records and ledgers.

- The December 21, 2021 search warrant of Blyther's vehicle, where law enforcement recovered approximately 2 pounds of marijuana, approximately $2,500.00 in United States currency, LA Dank packaging containing marijuana, and a Visa credit card that had "Dank" and Banire's name on it.

- The December 21, 2021 search warrant of 480 K Street, Apartment 1134, Southwest, Washington D.C. (an address associated with Blyther), where law enforcement recovered a Glock 26 9 millimeter firearm with a machinegun conversion device installed, seven machinegun conversion devices, assorted ammunition, an AR magazine, marijuana edibles in LA Dank packaging, marijuana distribution records and ledgers, and twenty plus empty suitcases containing plastic wrap observed in previous search warrants designed to conceal the smell of marijuana.

## DISCUSSION AND RECOMMENDATION

### I.   Generally Applicable Legal Principles

Though the Sentencing Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that the Guidelines provide "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 590 U.S. 38, 49 (2007); *see also United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006) ("*Booker* has not changed how the Guidelines range is to be calculated."). Moreover, the Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007); *Dorcely*, 454 F.3d at 376 (noting that "a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness").

To calculate a Guidelines sentence, a district court must first select the applicable offense guideline and then select the base offense level within that applicable offense guideline. *United States v. Flores*, 912 F.3d 613, 616 (D.C. Cir. 2019). As the D.C. Circuit has long held, this inquiry must include an evaluation of all relevant conduct that could affect the Guidelines calculation. As noted:

> In the post-*Booker* world, the court must calculate and consider the applicable Guidelines range but is not bound by it. Under the Guidelines, "the sentencing range for a particular offense is determined on the basis of all 'relevant conduct' in which the defendant was engaged and not just with regard to the conduct underlying the offense of conviction." *Witte v. United States*, 515 U.S. 389, 393 (1995) (citing U.S.S.G. § 1B1.3). Section 1B1.3 details the conduct the sentencing court may consider in determining the applicable Guidelines range and the commentary to that section states, "Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." U.S.S.G. § 1B1.3, Commentary, Background

## II.    Defendant's Sentencing Guidelines Calculation

### A. Defendant's Criminal History Category

The Government concurs with the United States Probation's assessment of the Defendant's criminal history scores, as set forth in the Presentence Investigation Report ("PSR"). ECF No. 176. The total criminal history score is 0, as Lance has no prior convictions, and therefore establishes a criminal history category of I.

### B. Total Offense Level

The Government also concurs with the United States Probation's assessment of the Offense Level Computation set forth in the PSR. ECF No. 176, Pages 10-11.

### III. Sentencing Recommendation

When determining the appropriate sentence, the district court should consider all the applicable factors set forth in 18 U.S.C. § 3553(a). *See United States v. Gall*, 552 U.S. 38, 49-50 (2007). The listed factors in 18 U.S.C. § 3553(a) include: (1) the nature and circumstances of the offense; (2) The history and characteristics of the defendant; (3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (4) the need for the sentence imposed.

### A. Nature and Circumstances of the Offense

The nature of this offense is serious and warrants the government's requested sentence. Lance and his co-defendants operated a sophisticated and broad conspiracy to distribute marijuana, as shown by the numerous search warrants the government executed during the investigation of this case. Lance himself, though, was not a passive participant in the conspiracy. He is seen frequently in the "DC Dank Full Members" chat and advertising marijuana associated with LA Dank on his personal Instagram account. Lance, in responding to one of his co-defendants, shows that he kept tabs on the points of distribution (i.e. the trap houses) by checking to see if any LA

Dank members were present to facilitate sales.  Furthermore, Lance was found in 1928 Whistling Duck Drive, Upper Marlboro, Maryland on June 15, 2021 – a Airbnb rental where its interior showed a sophisticated and careful operation involving exterior surveillance cameras, and which contained four firearms (one of which later was confirmed to be a machinegun), 51 pounds of marijuana, ammunition, firearm magazines, a money countering machine, and approximately $13,359 in United States currency.

 And while the District of Columbia law has legalized the possession and use of marijuana to a certain extent, its status is clear under federal law: marijuana continues to be illegal.  The Controlled Substances Act ("CSA") designates marijuana as a Schedule I narcotic due to its "high potential for abuse, lack of any accepted medical use, and absence of any accepted safety for use in medically supervised treatment." *Gonzales v. Raich*, 54 U.S. 1, 14 (2005) (citing 21 U.S.C. §§ 812 (b)(1), 812 (c)); *United States v. Johnson*, 228 F. Supp 3d 57, 62 (D.C. Cir. 2017).  Indeed, Congress intended a harsh punishment for those found to be in possession with intent to distribute 100 kilograms or more of marijuana, as evidenced by the five-year mandatory minimum.

Furthermore, the nature and circumstances of the offenses strongly demonstrate that Randall Lance was in possession of numerous dangerous firearms in connection with large-scale distribution of marijuana. Concerningly, this also included multiple firearms with machine gun conversion switches  - including one recovered in the same apartment as the defendant.

There has been an exponential boom in machine gun conversion switches nationwide.  *See* Bureau of Alcohol, Tobacco, Firearms and Explosives, 4-5 (2023) "National Firearms Commerce and Trafficking Assessment (NFCTA): Crime Guns - Volume Two," *available at* https://www.atf.gov/firearms/docs/report/nfcta-volume-ii-part-vii-recommendations/download (noting 570% increase in number of recovered machine gun conversion parts in 2017 to 2021

compared to 2012 to 2016).

Washington, D.C. has not escaped this alarming trend.  Indeed, the dramatic increase in machinegun conversion devices recovered in the past two years alone is frightening.  Below are the estimated number of recovered machinegun conversion devices recovered in Washington D.C, according to ATF Washington Field Division (WFD) crime gun analytics:

- 2021 – 27  Machinegun Conversion Switches Recovered

- 2022 – 119 Machinegun Conversion Switches Recovered

There was an *over 340%* increase in recoveries of machinegun conversion devices in the District from 2021 to 2022.  This alarming trend appears to be accelerating in 2023.  As of July 20, 2023, ATF WFD crime gun analytics identified 83 recovered machine gun conversion devices recovered.  If this pace continues, there will be an *over 490%* increase in recoveries of machinegun conversion devices in the District from 2021 to 2023.

To help explain this danger posed by these devices, the government is providing the court with a video demonstrating the frightening power of machine guns like the one the defendant and his co-conspirators retained, which has been provided to Chambers and counsel for Lance under separate cover. *See* Exhibit A.  As shown in the video, these machine gun conversion devices dramatically increase how quickly the firearm shoots.  In seconds, the shooter is able to empty the magazine of all of its rounds.

The defendant's crimes are not isolated from the community he lives in, rather they directly affect the community and the people who live in it.  In Washington D.C., the rate of violent crimes committed with guns in the continues to rise: between September 8, 2020 and September 8, 2023, violent crimes committed with a gun went up by 2,659 offenses citywide compared to the previous three years. *Crime Cards*, Metro. Police Dep't.

https://crimecards.dc.gov/all:violent%20crimes/with%20a%20gun/3:years/citywide:heat                (last

visited September 8, 2023).  Similarly, the homicide rate has skyrocketed, with the past two years

having the highest homicide rates since 2003:  In 2022, there were 203 homicides, and in 2021,

226 homicides.  *District Crime Data at a Glance: 2023 Year-to-Date Crime Comparison*, Metro.

Police  Dep't,   https://mpdc.dc.gov/page/district-crime-data-glance   (last  visited  September  8,

2023).  There have already been at least 144 homicides in 2023, a 29% increase from this time last

year.  *Id.*  By comparison, in 2012, there were 88 homicides.  *Id.*  While the defendant's crimes

did not result in any direct violence against another, unlawful possession, in conjunction with the

distribution of illegal drugs, can lead to dangerous consequences, thereby underscoring the need

to take such crimes seriously.

### B.  The History and Characteristics of the Defendant

As noted in the PSR and previously in this memorandum, Lance comes before the Court

with no previous convictions.  Also noted in the PSR are three arrests in 2014 and 2016 for Illegal

Gambling and Possession of a BB Gun, all three of which Lance attributes to "the influence of

marijuana or had something to do with marijuana."  ECF No. 176, Page 14.  It is clear that

marijuana has a toxic presence in Lance's life, as his only contacts with law enforcement have, in

his own words, been a direct result of marijuana.  For those reasons, the government concurs with

the supervised release recommendation by probation that Lance undergo substance use testing and

substance use treatment upon his release from incarceration.

### C.  The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records who have been Found Guilty of Similar Conduct

The government recommends to this Court a sentence of sixty-six months of incarceration.

With respect to § 841(b)(1)(B)(vii), it would be hard pressed to find a sufficient comparator for

defendant Lance.  Absent a substantial assistance motion or safety-valve relief (both of which are

inapplicable in this case), no court has the authority to sentence below the five-year statutory mandatory minimum.  Here, the government is not requesting a variance or a departure from the guidelines.  It is instead requesting a midpoint sentence, which accurately reflects Lance's participation in the conspiracy, and also reflects the breadth and scale of the operation Lance and his co-defendants operated.

### D.  The Need for the Sentenced Imposed

The government believes that a sentence around the midpoint of Lance's guidelines is an appropriate sentence in this matter.   Mr. Lance's first criminal conviction is a serious one, involving a large-scale criminal conspiracy involving hundreds of pounds of controlled substances and nineteen firearms, many of which were discovered to be machineguns.   A midpoint sentence reflects the seriousness of the offense for which Lance is before the Court and, importantly, affords adequate deterrence to criminal conduct of this type – the mass distribution of controlled substances in conjunction with firearm possession.  *See* 18 U.S.C. § 3553(a)(2)(A) and (B).

### CONCLUSION

For all these reasons, the Government recommends that the Court sentence the Defendant to sixty-six months of incarceration to be followed by four years of supervised release.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. No. 481052

By:        */s/ Justin F. Song*
JUSTIN F. SONG
Assistant United States Attorney
N.Y. Attorney No. 5626379

Federal Major Crimes Section
601 D Street NW
Washington, D.C. 20530
(202) 227-9019
Justin.Song@usdoj.gov

*/s/ Meredith E. Mayer-Dempsey*
MEREDITH E. MAYER-DEMPSEY
N.Y. Attorney No. 5213202
Assistant United States Attorney
Federal Major Crimes Section
601 D Street N.W.
Washington, D.C. 20530
(202) 815-4063
Meredith.Mayer-Dempsey@usdoj.gov